No. 45,336

Jules V. Doty, executor of the last will and testament of J. E. Nelson, deceased, *Appellant*, v. Helen Lucile Martin, *Appellee.*

In the Matter of the Estate of J. E. Nelson, deceased.

(454 P. 2d 435)

Opinion filed May 17, 1969.

*Thomas E. Gleason,* of Ottawa, argued the cause, and *Robert L. Pinet,* also of Ottawa, was with him on the brief for the appellant.

*Ralph E. Skoog,* of Topeka, argued the cause, and *Jacob A. Dickinson,* of Topeka, and *Richard O. Skoog,* of Ottawa, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, C. J.: The appeals in these consolidated cases are from judgments denying probate of a purported will and upholding the validity of a deed.

Mr. J. E. Nelson, a widower, was a long-time resident of Ottawa. He had two sisters who also lived in Ottawa. He also had an adopted daughter—Helen Lucile Martin—hereafter referred to as Helen—who lived in Topeka.

It appears that in May 1961 Mr. Nelson was adjudged incompetent in a proceeding in the probate court of Franklin county—Helen being the movant in that action. For a time he was a patient in a mental hospital. On November 5, 1962 he was restored to capacity by the probate court.

On May 7, 1963, Mr. Nelson, accompanied by one of his sisters, went to a law office in Ottawa for the purpose of having a will drawn. The attorney prepared a will which was signed by Mr.

Nelson in the presence of three witnesses—who signed as such. By its terms, all of his property was devised and bequeathed to his two sisters—share and share alike. An item of the will stated that no provision had been made for Helen because of the testator's feeling that he had sufficiently provided for her during his lifetime. Jules V. Doty, an attorney of Ottawa, was named as executor.

Hereafter, this will of May 7, 1963, is referred to as the "first will".

On April 8, 1964, Mr. Nelson purportedly executed another will which revoked any and all former wills and by the provisions of which all of his property was devised and bequeathed to Helen. He purportedly signed this will in the presence of three witnesses—who signed as such. Helen was named as executrix.

Hereafter, this will of April 8, 1964, is referred to as the "second will".

On February 8, 1966, Mr. Nelson executed a quit-claim deed by which he conveyed to Helen a substantial portion of his estate. Three friends signed as witnesses to his signature. This deed was duly recorded the next day.

Mr. Nelson died on April 7, 1966, being survived by Helen and his two sisters.

The executor of the first will petitioned for its probate. Helen filed her written defenses alleging that it had been revoked by the second will. She also petitioned for probate of the second will. The executor of the first will filed his written defenses alleging that the instrument in question (the second will) was not the last will and testament of Mr. Nelson.

Following a hearing, the probate court admitted the first will to probate and denied probate of the second will.

Helen appealed to the district court from those rulings.

Shortly after the probate court rulings the executor of the first will filed an action in the district court to set aside the deed of February 8, 1966, alleging that it did not bear the true and genuine signature of Mr. Nelson and that at the time of its alleged execution he was incompetent and without physical or mental capacity to execute such deed.

The appeal by Helen in the will case and the executor's action to set aside the deed were tried together in the district court on a common record.

Following an extended trial the court affirmed the ruling of the probate court as to the wills, and upheld the deed.

Its findings of fact with respect to the wills were that the first will (of May 7, 1963) was duly executed and attested and that at the time Mr. Nelson was of sound mind and under no restraint, and that the second will (of April 8, 1964) was not shown to have been legally prepared and duly executed.

With respect to the deed (of February 8, 1966) the court found the evidence had not established that Mr. Nelson was incompetent and without mental capacity to execute the deed, and further found that it was duly executed and acknowledged by him and delivered to Helen.

Post-trial motions were overruled and judgment was entered accordingly.

Helen has appealed from the judgment denying probate of the second will.

The executor of the first will has appealed from the judgment upholding the deed.

We first discuss briefly the deed.

On the afternoon of February 8, 1966, Helen went to the office of Leota Thompson, an experienced legal secretary, notary public, and employee in an abstract office in Ottawa. Helen asked her to ascertain the legal descriptions of the real estate to be conveyed and to prepare a deed accordingly. Miss Thompson did so, and that evening met Helen and three friends in Mr. Nelson's room in the hospital. He was told they had the deed for his signature and was asked if he wanted to sign it and thereby convey the property to Helen. He replied that he did. Mr. Nelson then signed the deed, and the three friends signed as witnesses to his signature. Miss Thompson then executed the formal acknowledgment of his signature and attached her seal as a notary public. Although witnesses to the signature of a grantor in a deed are unnecessary—Miss Thompson—apparently being aware of possible future "controversy" —had the three friends sign as a "precautionary measure".

Concededly, there also was evidence to the effect that at the time in question Mr. Nelson was mentally and physically unable to transact any business, and that the signature on the deed was not his genuine signature.

The province of this court, however, is not to weigh the evidence.

In light of what has been briefly related above—together with other evidence in support of the deed's validity—it must be held

that the ruling of the trial court was based on substantial evidence and is not to be disturbed.

We now turn to a brief discussion of the evidence relating to the second will—probate of which was denied.

In a memorandum opinion which was a general discussion of the evidence, the trial court commented on the fact the will had been prepared and typed by Helen, and that in the opinion of two qualified handwriting experts the signature on the will was not the genuine signature of Mr. Nelson. Mention also was made of K. S. A. 59-605—the so-called "independent advice" statute applicable to a situation in which a will is prepared by the sole or principal beneficiary who is at the time in a position of confidence or trust to the testator.

In passing, we agree with Helen's contention there is nothing in the evidence to establish that she occupied any such confidential relationship to her father. On the other hand, it is clear the trial court's ruling was not based on the statute, for it specifically stated that it was "convinced the will dated April 8, 1964, was not executed by J. E. Nelson" and, as above mentioned—found that such will was "not shown to have been legally prepared and duly executed". Such finding, being supported by substantial evidence, is conclusive on appeal.

From beginning to end—these were "fact" cases. No alleged trial errors of any consequence are urged. It is true there was evidence, which, if believed by the trier of facts—would have supported a contrary conclusion in each case. It is unnecessary to set out that evidence (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057). It also is quite true that the trial court apparently placed more emphasis on the testimony of the handwriting experts in one case than it did in the other—but—that was within its province.

We find no error in the record. The judgment upholding validity of the deed is affirmed. The judgment denying probate of the second will is affirmed.